IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID KOONTZ *

    Plaintiff, *

v. * Civil Case No. 19-CV-01321-JMC

JULIA KIMBERLEY, *et al*, *

    Defendants *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This suit arises from injuries sustained by David Koontz ("Plaintiff" or "Mr. Koontz") during an altercation between Mr. Koontz, eight employees of the Washington County Sheriff's Office, and two employees of Meritus Hospital. (ECF No. 1). Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments of the Federal Constitution, violations of Articles 24 and 26 of the Maryland Declaration of Rights, and various common law tort claims. The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4.

On August 13, 2019, Plaintiff filed an Amended Complaint. (ECF No. 67).[1] Pending before this Court are three dispositive motions. First, Defendants Julia Kimberley, Greg Alton, Howard Ward, Daniel Monn, Bryan Glines, Spencer Shank, Clayton Stottlemeyer and Ben Jones, all of whom are employees of the Washington County Sheriff's Office (collectively "Defendant Deputies") filed a Motion to Dismiss All Claims for Failure to State a Claim, or in the Alternative

---

[1] This Amended Complaint was filed in response to the Court's concerns regarding the inclusion of John Doe Defendants.

for Summary Judgment in their favor.[2] (ECF No. 49). Second, Defendant Board of Commissioners of Washington County (the "Commissioners") filed its own Motion to Dismiss, or in the Alternative to Bifurcate. (ECF No. 48). Finally, Defendant State of Maryland (the "State") has filed a Motion to Dismiss. (ECF No. 54). The issues have been fully briefed and no hearing is necessary to resolve this motion. *See* Local Rule 105.6. For the reasons that follow, this Court will:

1. **GRANT IN PART and DENY in PART** the Defendant Deputies' Motion to Dismiss or in the Alternative for Summary Judgment;
2. **GRANT** the Commissioners' Motion to Dismiss and **DENY** the Commissioners' Motion to Bifurcate as moot; and
3. **GRANT** the State's Motion to Dismiss.

## I. FACTUAL BACKGROUND

According to the Amended Complaint, on January 4, 2018, Plaintiff was driving a two-door gray Hyundai Sonata and running errands in Hagerstown, Maryland. (ECF No. 67 at p. 6). At some point during these errands, Plaintiff noticed that he was being surveilled by Defendant Deputies Monn, Kimberley and Ward. *Id.* at p. 7–8. For their part, the Defendant Deputies explain they were engaged in a directed enforcement operation targeting an area pawn shop, which was believed to be patronized by drug addicted individuals pawning stolen goods to obtain drug money, and began surveilling Plaintiff when he was observed exiting that pawn shop. (ECF No. 49-1 at p. 12–13).

---

[2] The parties recognize that the Amended Complaint contains no substantive changes such that their already-pending motions filed in response to the original Complaint should be applied to the Amended Complaint.

Plaintiff explains that eventually he pulled over at a Super 8 Hotel, 16805 Blake Road, and parked his vehicle in the gravel parking lot to urinate in a bottle that he kept in his vehicle. (ECF No. 67 at p. 8). To that point, Mr. Koontz had not been seen or alleged to be under the influence, or in possession of drugs or alcohol, issued any citation, or accused of committing or attempting to commit any crime. *Id.* at 7.

The parties agree that Defendant Deputy Alton, using binoculars, allegedly observed Mr. Koontz lean forward in the driver's seat of his vehicle. (*Id*. at p. 8; ECF No. 49-1 at p. 13). By way of supporting affidavit, Defendant Deputy Alton states that this behavior "was similar to individuals who Alton had previously observed injecting drugs."[3] (ECF No. 49-2 at p. 2). Defendant Deputy Alton then instructed Defendant Deputy Kimberley, by radio, to approach Plaintiff's vehicle. (ECF No. 67 at p. 8). Defendant Deputy Kimberley, by way of her own affidavit, corroborated that Defendant Deputy Alton radioed, and said that she should perform a well-being check on Plaintiff. (ECF No. 49-3 at p. 2).

According to Plaintiff, Defendant Deputy Kimberley approached the driver's side of his vehicle and falsely stated to Plaintiff that his car matched the description of a suspicious vehicle in the area, asking for Plaintiff's identification.[4] (ECF No. 67 at p. 8). Plaintiff did not provide identification but instead rolled up his window, locked his car, and began to cover his windshield and windows with sun shades, to, according to Plaintiff, "prevent Defendant Kimberley from seeing Mr. Koontz urinate and to avoid a situation involving indecent exposure." (*Id.*; ECF No. 49 Ex. A (body camera footage), at 0:45–1:14). While Plaintiff was covering his windshield,

---

[3] Defendant Deputy Alton further states in his affidavit that he then saw Plaintiff "fall backward in his seat with his head tipped back," followed by seeing Plaintiff "slump forward over the steering wheel." (ECF No. 49-2 at p. 2).

[4] Defendant Deputy Kimberley further explained that she used this deception in order to protect the covert nature of the pawn shop surveillance operation. (ECF No. 49-3 at p. 2).

3

Defendant Deputy Kimberley radioed her colleagues and noted that Plaintiff had locked himself inside his vehicle and was putting up sun shades. (*Id.*; ECF No. 49 Ex. A, at 0:50–1:04). According to Plaintiff, Defendant Deputy Ward, in plain clothes, then rushed towards Plaintiff's vehicle with his gun drawn and aggressively screamed at Plaintiff to "[o]pen the fu**ing window or it's getting busted!" (ECF No. 67 at p. 8). However, the body camera footage indicates that Defendant Deputy Ward instructed Plaintiff to open his window three times (all of which were ignored by Plaintiff) before he drew his weapon. (ECF No. 49 Ex. A, at 1:47–1:55).

At this point, the parties' description of events, while somewhat consistent on key points, differ in the amount of detail provided. According to Plaintiff, he removed the sun shades, and upon command from Defendant Deputy Ward, slowly raised his hands. (ECF No. 67 at p. 9). He then "unlocked the driver side door, opened the door," and began exiting voluntary, but Defendant Deputy Ward grabbed him and pulled him from the car. *Id.* According to Plaintiff, because he was frightened by Defendant Ward's aggressive demeanor, Plaintiff tried to free himself of Defendant Deputy Ward's grasp by pulling away. However, he was tackled to the ground by Defendant Deputies Ward, Monn, and Glines, while Defendant Deputy Kimberley stood to the side and observed. *Id.* Thereafter, Plaintiff contends that Defendant Deputy Ward wrapped Plaintiff's legs together and Defendant Deputies Glines and Monn "took control of Mr. Koontz's arms and upper body." *Id.* While restrained, Plaintiff stated that he was on medication and that he wanted to go retrieve the medication, but the Defendant Deputies did not respond to his request. *Id.* at p. 10. Next, Plaintiff was ordered to put his hands behind his back (while being restrained by Defendants Ward, Monn, and Glines) and "less than three seconds after the command, Defendant Kimberley deployed her taser and struck Mr. Koontz once in the middle of the back." *Id.* Plaintiff was then "further physically restrained," and placed into handcuffs. *Id.*

4

Defendants' version of these events, supported by affidavit and body camera footage, [5] adds important detail to Plaintiff's recital. Defendants state that after refusing Defendant Deputy Ward's third command to lower his window, Plaintiff had to be instructed twice to show his hands. (ECF No. 49-1 at p. 15; Ex. A, at 1:55–2:09). He was ordered twice to open the car door and, because he had his keys in his hand, was further ordered not to put the keys in the ignition but to exit the vehicle. *Id*. He was again ordered to show his hands, and then ordered four times to exit his vehicle. (Ex. A, at 1:55–2:21). Although Plaintiff opened the door and placed one foot outside the vehicle, he did not exit the vehicle completely, but instead twisted to reach back inside the vehicle towards the console. (ECF No. 49-1 at p. 15; Ex. A, at 2:11–2:34). At this point, Defendant Deputy Ward grabbed him to pull him out of the vehicle. *Id.* A struggle ensued between Plaintiff and Defendant Deputies Glines, Monn and Ward, resulting in Plaintiff and Defendant Deputy Ward falling to the ground. *Id*. The footage demonstrates that Plaintiff was actively noncompliant with requests to present his hands behind his back for handcuffing. (ECF No. 49 Ex. A, at 2:40–2:50). At that point, Defendant Deputy Alton who had arrived at the scene, instructed Defendant Deputy Kimberley to use her taser on Plaintiff. (ECF No. 49-1 at p. 16; Ex. A, at 2:50–3:05).

Once in custody, Plaintiff was charged with one count of common law obstructing and hindering and one count of resisting arrest in violation of Maryland Criminal Code § 9–408(b). *Id*. However, before booking, pursuant to the Washington County Sheriff's Office's Policy, Plaintiff was transported by EMS to Meritus Medical Center for an evaluation and removal of the taser probe.

---

[5] *See Harris v. Pittman*, 927 F.3d 266, 275–76 (4th Cir. 2019) ("In *Scott v. Harris*, which also involved a Fourth Amendment excessive force claim, the Supreme Court was faced with a videotape of the incident in question that "utterly discredited" the plaintiff's account, rendering it a "visible fiction." As between a videotape of undisputed authenticity, and the plaintiff's story, the Court held, the videotape should prevail.") (internal citations omitted).

According to the Amended Complaint, Plaintiff was temporarily admitted to Meritus Medical Center for evaluation. (ECF No. 67 at p. 11). During this time, he was under the supervision and custody of Defendant Deputies Shank and Stottlemyer and "his hands and wrists" were handcuffed to the hospital bed. *Id.* At Defendant Deputy Stottlemeyer's request, Defendant Deputy Jones joined the other Defendant Deputies to assist in transporting Plaintiff from the hospital to the Washington County Detention Center. *Id.* Around 8:27 P.M. the hospital cleared Plaintiff for release. *Id.* At this time, Plaintiff contends that he was vulnerable, in severe pain from the previous altercation, and "confused and frightened by the presence and dominance being exerted by Defendants Jones, Shank, and Stottlemeyer." *Id.* Due to this confusion and "upon a legitimate concern for his physical safety following the violent interaction near his vehicle, Mr. Koontz refused to leave Meritus Medical with the Defendant Deputies by holding on to the railings along the hospital bed." *Id.*

At this impasse, because Plaintiff refused to leave with the Defendant Deputies, Defendant Deputy Jones tried to pry Plaintiff's hands from the bed rail by pressing on various pressure points in his jaw. *Id.* at p. 12. Plaintiff contends that despite his legs being shackled and his being physically restrained by three law enforcement officers (Defendant Deputies Jones, Shank and Stottlemeyer), they also asked for additional assistance from two agents of Defendant Meritus Medical Center. *Id*. Because Plaintiff refused to let go of the bed, Defendant Shank asked Defendants Stottlemyer and Jones, "should I tase him?" *Id.* Plaintiff alleges that the Defendant Deputies in the room expressly or tacitly encouraged the discharge of Defendant Shank's taser. Consequently, around 8:45 p.m., Defendant Shank tased Plaintiff once in the abdomen. *Id.* At this time, Plaintiff was also allegedly being restrained by agents of Meritus Medical Center, Jones, and Stottlemyer, and his legs were bound by shackles. *Id*. "As an immediate and involuntary

result of being tased for the second time that evening, Mr. Koontz fell back into the hospital bed and his legs flew upwards, allegedly striking Defendant Shank in the face." *Id.* at p. 13. This resulted in him being tased a third time. *Id.* Plaintiff was examined by another physician and the taser probes were removed, which caused Plaintiff to further scream out in pain and to break down in tears and cry. *Id.* Then, Plaintiff "wearing only his tattered boxer–briefs, was aggressively and forcibly dragged from the Hospital, down a hallway and outside to the patrol vehicle." (ECF No. 67 at p. 13).

Defendants' version of these events– supported both by affidavit and additional body camera footage (ECF No. 49 Ex. D and E) – does not significantly depart from Plaintiff's basic narrative, other than to emphasize Plaintiff's continued hostility towards the Defendants and his active resistance towards being moved from the hospital into custody, despite repeated instructions and warnings. *Id.* at pp. 16 –17. Charges of second degree assault, resisting arrest and disorderly conduct were added to his existing charges. *Id.* at pp. at p. 18–19.

Based upon these encounters, Plaintiff asserts thirty claims (and claims within claims) under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the Federal Constitution, violations of Articles 24 and 26 of the Maryland Declaration of Rights, and various common law torts including false arrest, false imprisonment, malicious prosecution and intentional infliction of emotional distress.

## II. STANDARD OF REVIEW

The Defendants' Motions are predicated on Federal Rule of Civil Procedure 12(b)(6) and, as to the Defendant Deputies, alternatively Rule 56. (ECF No. 49). The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and 'not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of*

*Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). A Rule 12(b)(6) motion "constitutes an assertion by a defendant that, even if the facts alleged by plaintiff are true, the complaint fails as a matter of law, to state a claim upon which relief can be granted." *Jones v. Chapman*, 2015 WL 4509871, at *5 (D. Md. July 24, 2015).

Whether a complaint states a claim for relief is assessed in accordance with the pleading requirements of FRCP 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss "detailed factual allegations are not required, but a 'plaintiff must provide the grounds of his entitlement to relief' and this requires 'more than labels and conclusions, or a formulaic recitation of the elements of a cause of action.'" *Petry v. Wells Fargo Bank, N.A.,* 597 F. Supp. 2d 558, 561– 62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). In reviewing a Rule 12(b)(6) Motion to Dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. National Flood Ins. Program*, 885 F. Supp. 133, 136 (D. Md. 1995). Further, the Court must draw all reasonable inferences "derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

In resolving a motion under Rule 12(b)(6), a court considers matters only within the pleadings. If matters outside the pleadings are presented, and are considered, the motion shall be treated as one for summary judgment pursuant to Rule 56. *Humphrey*, 885 F. Supp at 136. Federal Rule of Civil Procedure Rule 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden "to demonstrate the absence of any genuine dispute of material fact." *Jones v. Hoffberger Moving Servs*, 92 F. Supp. 3d 405, 409 (D. Md.

2015). A "dispute as to a material fact 'is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III. DISCUSSION

In sum, Mr. Koontz sues three[6] different entities and their agents, and asserts nearly identical claims against each. Specifically, Plaintiff's claims fall under 42 U.S.C. 1983 (based on the Fourth and Fourteenth Amendments), Maryland Declaration of Rights Articles 24 and 26, and the common law torts of false imprisonment, false arrest, malicious prosecution, and intentional infliction of emotional distress. Because the applicable legal standard depends upon the entity being sued, the Court has divided the claims with respect to such entities: (1) the Defendant Deputies; (2) the Commissioners; and (3) the State.

### A. **Koontz v. Defendant Deputies**

The Complaint contains multiple counts against the Defendant Deputies.[7] With respect to these claims, each Deputy is sued in his or her individual capacity. (ECF No. 67 at pp. 4, 15).[8] Although the claims against each Defendant Deputy are asserted in separate Counts, they are all nearly identical. The Defendant Deputies' Motion articulates five generalized arguments in

---

[6] In fact, Plaintiff sued four entities. However, Meritus Medical did not file a Motion to Dismiss, but rather filed an Answer to the Amended Complaint.

[7] After parsing through these claims within claims, it appears that the Counts, as alleged against each individual Deputy are as follows: Kimberley- Counts I -VI; Ward- Counts VII-IX; Glines- Counts X-XII and XIV-XV; Monn- Counts X-XI and XIII-XV; Alton- Counts X, XI and XVI1; Shank- Counts XVII-XXI; Stottlemyer- Count XXII; Jones- Count XXII.

[8] However, while neither party addressed this, Maryland law does not distinguish between a defendant's "individual capacity" and "official capacity" for purposes of state constitutional claims. *Bumgardner v. Taylor*, 2019 WL 1411059, at *6 (D. Md. Mar. 28, 2019) (citing *Ritchie v. Donnelly*, 324 Md. 344, 375 (Md. 1991)).

support of Summary Judgment. These contentions are: (1) the force used during both incidents was objectively reasonable; (2) the existence of probable cause to arrest and charge Plaintiff negates all claims grounded on false arrest, imprisonment, and malicious prosecution; (3) the Deputy Defendants are entitled to the protection of qualified immunity from the § 1983 claims; (4) the individual Deputies are entitled to statutory public official immunity as to the claims under the Maryland Declaration of Rights and common law torts; and (5) the intentional infliction of emotional distress claims have been insufficiently pleaded. (ECF No. 49-1).

"In this case, we adhere to 'the better approach to resolving cases in which the defense of qualified immunity is raised,' that is, we 'determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." *Armstrong v. Village of Pinehurst*, 810 F.3d 892, 898 (2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Generally, to state a valid claim for relief under § 1983, the plaintiff must demonstrate: (1) the defendants acted under color of state law, and (2) the plaintiff was thereby deprived of a constitutionally or federally protected right. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

Because the parties do not dispute that the Defendant Deputies acted under color of state law, we will turn to the second inquiry—whether Plaintiff was deprived of a constitutionally or federally protected right.

### 1. Unlawful Seizure[9]

As described by the Fourth Circuit, our initial inquiry is this: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Armstrong*, 810 F.3d at 989 (quoting *Brosseau v. Haugen*, 543 U.S. 194,

---

[9] Plaintiff also generally asserts unlawful searches during the arrest process, but does not articulate them with enough particularity to be considered separate from the seizure or whether they are allegedly objectionable simply because they were incident to the seizure of his person.

197 (2004)). In this case, regarding the unlawful seizure allegations, the answer is no. Even taking Plaintiff's allegations as true (where not specifically supplemented or contradicted by the body camera footage), the conduct of the Deputy Defendants in approaching, questioning and taking Plaintiff into custody was justified.[10]

The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures . . . ." U.S. CONST. AMEND IV. The Fourth Amendment is violated when a warrantless arrest is made without probable cause. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). The Fourth Circuit has identified "three categories of police-citizen interactions subject to Fourth Amendment analysis: (1) an arrest, which requires probable cause; (2) a brief investigatory stop, which requires reasonable suspicion; and (3) brief encounters, which do not implicate the Fourth Amendment." *Jones v. Jordan*, 2017 WL 4122795, at *4 (D. Md. Sept. 18, 2017).

Reasonable suspicion to justify a brief investigatory stop requires only that the "totality of the circumstances" demonstrate that criminal activity may be afoot. *Jones*, 2017 WL 4122975, at *6. *See also United States v. Foster*, 824 F.3d 84, 88–89 (4th Cir. 2016) ("While a mere hunch is insufficient, reasonable suspicion is less demanding than probable cause and may well fall considerably short of satisfying a preponderance of the evidence standard."). By comparison, "[p]robable cause to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed an offense." *Humbert v. Mayor of Balt.*, 866 F.3d 546, 555 (4th Cir. 2017). The probable-cause inquiry turns on two factors: "the suspect's

---

[10] The Complaint is unclear as to whether Plaintiff also claims a separate "seizure" (as opposed to "excessive force") violation inside the hospital. To the extent that it does, these claims are also not sustainable given that the parties do not attack the necessity of Plaintiff's medical evaluation after the first incident of tasing.

11

conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017) (citing *Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016)).

Applying these two standards to the conduct at issue, Plaintiff came to the attention of the Defendant Deputies within the course of a directed enforcement operation focused on individuals potentially pawning stolen goods to obtain money for drugs. (ECF No. 49-1 at p. 12). Plaintiff was seen leaving the pawn shop, and then was further observed in his vehicle in the back portion of a parking lot bent over his steering wheel in a manner that Defendant Deputy Alton has indicated by affidavit was consistent with individuals he previously observed using illegal drugs. (ECF No. 49-2 at p. 5). Based on this articulable suspicion, Defendant Deputy Alton radioed Defendant Deputy Kimberley to approach the vehicle for a welfare check. (ECF No. 49-3 at p. 2). Even when viewed in the light most favorable to the Plaintiff, and accepting Plaintiff's account that he was bending forward to urinate, at the time of Defendant Deputy Kimberley's approach, she had sufficient reasonable suspicion through the information conveyed by Defendant Deputy Alton to conduct an initial inquiry and ask Plaintiff for his identification.[11] This remains true even though, Defendant Deputy Kimberley's stated reason for approaching Plaintiff and asking him for identification was, in fact, a ruse to protect the integrity of the covert pawn shop surveillance project.[12] (ECF No. 49-3 at p. 2).

When Plaintiff failed to comply with the request and instead rolled up his window, locked his door and began putting obstructions on the windshield and windows, Defendant Deputy

---

[11] *Wilkes v. State*, 364 Md. 554, 578 (2001) ("Conducting checks of driver's licenses, vehicle registration, and possible warrants is reasonable.").

[12] *Brown v. State*, 387 Md. 355, 362 (2003) ("The Supreme Court has long and consistently held that deception is a proper tool in crime detection, and that its use to obtain entry into Fourth Amendment-protected areas for the purpose of observation does not necessarily contravene any Fourth Amendment rights.").

Kimberley had sufficient reason to ask him to exit the vehicle. Plaintiff failed to comply with both Defendant Deputy Kimberley's and then Defendant Deputy Ward's multiple orders to open the window, show his hands, and exit the vehicle. Further, when Plaintiff did exit the vehicle, he did so only partially, reaching back towards his vehicle's console, culminating in a struggle with the Defendant Deputies. This behavior against the backdrop of the offense thought to be committed—the possession and use of a controlled substance—supports probable cause to charge Plaintiff with obstructing and hindering the investigation and resisting arrest, thus rendering his arrest lawful. Further, after actively refusing to be taken from the hospital and then kicking Defendant Deputy Shank, there was sufficient to support the additional charges incurred. The Court therefore concludes that Plaintiff cannot establish any constitutional or statutory right regarding his seizure and detention that was violated by his being taken into custody and processed accordingly. Moreover, given the Court's finding of probable cause, justifying his arrest and both sets of charges, Plaintiff cannot sustain his claims of false arrest, false imprisonment or malicious prosecution. *Ross v. Early*, 899 F. Supp. 2d 415, 429 (D. Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014) (reiterating no cause of action exists for false arrest unless probable cause is lacking); *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (noting burden of proof in a malicious prosecution claim includes that prosecution is unsupported by probable cause).

Given the Court's findings above, the Court will therefore GRANT judgment as a matter of law in favor of the Deputy Defendants as to all counts based on an unlawful stop, seizure, arrest, detention or prosecution as premised on the Fourth Amendment or Fourteenth Amendments,[13]

---

[13] Fundamentally, this Court must be "mindful of the Supreme Court's injunction that the Due Process Clause is not the proper lens through which to evaluate law enforcement's pretrial missteps." *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). This is because the Fourth Amendment "provides an explicit textual source of constitutional protection against [unreasonable seizures and arrests]," *Graham*, 490 U.S. at 395 (1989), and "define[s] the 'process that is due' for seizures of persons or property in criminal cases." *Id.* (quoting *Gerstein v. Pugh*, 420 U.S. 103, 125 n. 27 (1975)).

Article 24 of the Maryland Declaration of Rights[14] or the state law torts of false arrest, false imprisonment and malicious prosecution as might be alleged in Counts I, II, III, IV, VII, VIII, IX, X, XII, XIII, XIV, XV,XVI, XVII, XVIII, XIX, XXI, and XXII.

### 2. Excessive Force– Objective Reasonableness

Having found that Plaintiff cannot sustain his claims against the Defendant Deputies based on his stop, seizure, arrest or prosecution, the Court will next consider Plaintiff's claims of excessive force based on Plaintiff's physical exchanges with the Defendant Deputies, including being subject to a taser on three occasions (once in the parking lot and twice at the hospital). Claims of this nature are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Armstrong*, 810 F.3d at 899 (quoting *Graham v. Connor*, 490 U.S. 386, 388 (2007)). The Court of Appeals for the Fourth Circuit "has counseled that the test 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.* (quoting *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015)). Specifically, three considerations guide the Court's balancing: (1) "the severity of the crime at issue"; (2) the extent to which "the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Viewed in the light most favorable to the Plaintiff, notwithstanding the body camera evidence, the Court cannot conclude as a matter of law that the complained of use of force was objectively reasonable based on the record before it. This is particularly true in this context,

---

[14] Article 24 of the Maryland Declaration of Rights is the state law equivalent of the Fourteenth Amendment of the United States. *Rosa v. Bd. of Educ.*, 2012 WL 3715331, at *6 (D. Md. Aug. 27, 2012). Because Article 24 protects the same rights as the Fourteenth Amendment, the analysis is, for all intents and purposes "duplicative of the analysis under the Fourteenth Amendment." *Id.*

whereby a taser was used when officers faced a resisting detainee, which, in the Court's view, requires an even more exacting balancing. With regard to tasers, our Circuit has stated:

> Our precedent, then, leads to the conclusion that a police officer may *only* use serious injurious force, like a taser, when an objectively reasonable officer would conclude that the circumstances present a risk of immediate danger that could be mitigated by the use of force. At bottom, "physical resistance" is not synonymous with "risk of immediate danger."

*Armstrong*, 810 F.3d at 905.

For example, even if Plaintiff refused to release his arms for handcuffing, a fact-finder may not view this behavior as sufficient to justify the officer's force. *Id*. at 904 ("Such a refusal, therefore, does not justify deploying a taser when the subject '[i]s unarmed and there [i]s little risk [he] could access a weapon,' according to the Seventh Circuit.") (quoting Cyrus v. Town of Mukwonago, 624 F.3d 846, 863 (7th Cir. 2010). Therefore, in this case, the Defendant Deputy's use of force would only be deemed proportional if Plaintiff's resistance raised a risk of *immediate danger* that outweighed the *Graham* factors, as discussed above. This type of balancing is for the fact-finder to consider, rather than the Court, at the pre-discovery stage as a dispositive motion.

To be clear, in denying the Defendant Deputies' dispositive motion regarding excessive force at this time, the Court is expressing no view as to whether Plaintiff will ultimately meet his burden. A reasonable fact-finder on a fully developed record might well conclude that the use of force was objectively reasonable when analyzing all the circumstances of this case. Additionally, the Defendant Deputies are free to re-visit this issue by way of dispositive motion when the record is more fully developed at the conclusion of discovery.

B.  **Qualified Immunity**

Qualified immunity intends to "balance two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from

15

harassment, distraction, and liability, when they perform their duties reasonably." *Hupp v. Cook*, 931 F.3d 307, 310 (4th Cir. 2019). Qualified immunity protects government officials from suit for damages when their conduct does not violate a "clearly established constitutional right." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The Fourth Circuit engages in a two-fold analyses to determine if the Defendants are entitled to qualified immunity. First, the Court must determine whether the facts, when viewed in the light most favorable to the non-moving party, show that Defendants violated Plaintiff's constitutional or other rights, and, second whether those rights were clearly established at time of the conduct such that a reasonable officer would have known that such conduct was unconstitutional. *Hupp*, 391 F.3d at 310. The question of whether a right is clearly established is a question of law for the Court to decide*. Id.* at 318. However, the question of whether a reasonable officer would have known that the conduct at issue was unconstitutional cannot be decided on summary judgment if disputes of the historical facts exist. *Id.* Having found summary disposition is appropriate for Plaintiff's "seizure" claims, the Court need not reach the question of qualified immunity with regard to such claims. By contrast, having found that summary disposition is inappropriate for Plaintiff's excessive force claims, it is for a fact-finder to decide whether constitutional violation(s) took place based on such claims. The Court's next inquiry turns to whether, even if a violation took place, the right was "clearly established" at the time of Plaintiff's injury. Given that *Armstrong's* balancing, which specifically included the use of tasers on individuals resisting being taken into custody, was established law in our Circuit as of January 2016 (thus predating the events in this case by approximately two years) the Court finds that this right was clearly established at the time of Plaintiff's encounter. The record before the Court is insufficient, at present, to reach a finding as to whether a reasonable officer in the Defendant Deputies' position would be aware of such right.

16

C. **Statutory Public Official Immunity**

The Deputy Defendants assert that they are entitled to Statutory Public Official Immunity for all state common law torts and violations of the Maryland Declaration of Rights pursuant to Maryland Courts and Judicial Proceedings Article § 5–522(b). (ECF No. 49-1 at p. 27). This Court agrees. Under the Maryland Tort Claims Act, and 5–22(b), state officials are immune from liability in tort for an act or omission that is within the scope of their public duties and is made without malice or gross negligence. Specifically, the MTCA includes "a sheriff or deputy sheriff of a county" as state personnel falling within the ambit of the statute. MD. CODE, STATE GOV'T § 12–101(a)(6).[15]

Whether a complainant has sufficiently alleged malice to defeat the defense of Statutory Public Official Immunity is a question of law. *Shoemaker v. Smith*, 353 Md. 143, 167 (1999). In order for Plaintiff to defeat the motion based on governmental immunity, he must point to facts sufficient to raise an inference of malice, and these allegations must allege with "some clarity and precision those facts which make the act malicious." *Thacker v. City of Hyattsville*, 135 Md. App. 268, 301 (2000). There are no allegations of gross negligence anywhere in the Amended Complaint. As for malice, despite sprinkling the word "malice" throughout the Complaint, Plaintiff's factual allegations do not support a finding of malice. For purposes of 5-222(b), malice means "actual malice" which is characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill will, or fraud. *Estate of Saylor v. Regal Cinemas, Inc.*, 54 F. Supp. 3d 409, 422 (D. Md. 2014). Plaintiff's Amended Complaint is void of the clarity and precision required under Maryland law, nor is the Court permitted to infer malice simply from the

---

[15] *Jones*, 2015 WL 4509871, at *10 (holding the Baltimore Police Department "enjoys sovereign immunity from actions for damages based on state common law torts or state constitutional torts," warranting the claims based on state law be dismissed, on the grounds of sovereign immunity).

commission of a particular act (such as, in this case, a struggle or tasing during arrest). *See Chinwuba v. Larsen*, 149 Md. App. 327, 382–83 (2002). Consequently, the Court agrees with the Defendant Deputies that they are immune from liability for state common law torts and state constitutional torts, making dismissal of such claims within Counts II, III, IV, V, VI, VIII, IX, X, XI, XIV, XV, XVIII, XIX, XX, and XXI appropriate.

IV. **Koontz v. Board of Commissioners of Washington County**

On June 28, 2019, the Commissioners filed a Motion to Dismiss, or, in the Alternative to Bifurcate. (ECF No. 48). On July 12, 2019, Plaintiff filed an answer stating that it "did not oppose the complaint against the Defendant Board of County Commissioners of Washington County being dismissed without prejudice." (ECF No. 57). Of particular import, to the extent that Plaintiffs seeks to sue the Washington County Commissioners by asserting state law claims against the individual Deputy Defendants, those claims are barred by the doctrine of sovereign immunity. *See Balt. Police Dep't v. Cherkes*, 140 Md. App. 282, 313 (2001). Consequently, the Court shall **GRAN**T the Board of Commissioners of Washington County's Motion to Dismiss as to Counts XXVI–XXVIII without prejudice.[16] The Court correspondingly **DENIES** the Commissioners' Motion to Bifurcate as moot.

V. **Koontz v. State of Maryland**

The Plaintiff's First Amended Complaint contains three Counts against the against State of Maryland—XXIII –XXV. (ECF No. 67). The State filed a Motion to Dismiss on July 3, 2019. Plaintiff filed a response on July 17, 2019, in which he "submit[ted]" on the Motion to Dismiss

---

[16] Note that in order to assert a valid claim against the Commissioners, it would have to be one that did not run afoul of *Cherkes* and would otherwise have to be one for which Plaintiff had a good faith basis to assert, as consistent with his obligations under Rule 11 of the Federal Rules of Civil Procedure.

and Memorandum of Support filed by the State of Maryland." (ECF No. 60). Accordingly, this Motion to Dismiss is uncontested. Nonetheless, the Court will exercise its judgment before granting the State's motion. *See Radfar v. Rockville Auto Grp.*, 2018 WL 2972458, at *2 (D. Md. June 12, 2018).

As addressed above, Plaintiff brings nearly identical claims against the State, alleging that the State (itself) is liable for failing to train the Defendant Deputies, and that the State is responsible for establishing a policy or practice wherein the *Sheriff's Department* established a policy, practice, and pattern of excessive force. (ECF No. 67 at p. 61). The State argued, *inter alia*, that it retains its Eleventh Amendment Immunity from suit.

Plaintiff offers no explanation as to why this Court should, or could, subject the State of Maryland to suit in federal court, in the face of unambiguous precedent prohibiting such. As recognized by this Court, the Supreme Court plainly held that Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does *not* provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. *Three Lower Ctys. Cmty. Health Servs., Inc. v. Maryland Dep't of Health*, 2011 WL 3740781, at *3–4 (D. Md. Aug. 23, 2011), *aff'd*, 490 F. App'x 601 (4th Cir. 2012). Further, 42 U.S.C. § 1983 only authorizes suits against persons. The Supreme Court made it abundantly clear in *Will v. Michigan Department of Police* that neither a State nor its officials acting in their official capacities are "persons" who are subject to suit for money damages under Section 1983. 491 U.S. 58, 71 (1989). Further, this Court has consistently, and recently, reiterated that claims such as these are "not cognizable against states, state agencies, or state agents acting in their official capacities." *Brown v. Dep't of Pub. Safety*, 383 F. Supp. 3d 519, 538–39 (D. Md. 2019) (citing *Graham v. Cox*, 2019 WL 1427860, at *10 (D. Md. March 29, 2019)). This sovereign immunity shields the State from

actions seeking damages for State constitutional violations. *See Jones*, 2015 WL 4509871, at *9–10. Accordingly, State of Maryland's Motion to Dismiss as to Counts XXIII–XXV, is **GRANTED.**

## VI. CONCLUSION

For the foregoing reasons:

1. The Defendant Deputies' Motion to Dismiss is **GRANTED** in part and **DENIED** in Part;

2. The Washington County Commissioner's Motion to Dismiss is **GRANTED** and its Motion to Bifurcate is **DENIED** as moot; and

3. The State of Maryland's Motion to Dismiss is **GRANTED**.

A separate order will follow.

Date: September 17, 2019                         /s/
                                       J. Mark Coulson
                                       United States MagistrateMagistrate Judge